| | |
|---|---|
| DAVID B. BRIGGMAN,<br>TANIA CORTES,<br>and<br>RICHARD W. NAGEL<br><br>    Plaintiffs<br><br>v.<br><br>NEXUS SERVICES INC.<br>(a Virginia Corporation),<br><br>MICHAEL PAUL DONOVAN<br>aka, MICHEAL PAUL DONOVAN<br>(individually and in his capacity as President<br>and Chief Executive Officer of Nexus Services<br>Inc., and as former Trustee of the "Nexus<br>Services, Inc. 401(k) Plan"),<br><br>RICHARD EDWARD MOORE<br>(individually and in his capacity as Executive<br>Vice President of Nexus Services Inc., and as<br>former Trustee of the "Nexus Services, Inc.<br>401(k) Plan"),<br><br>and<br><br>ERIK G. SCHNEIDER<br>(individually and in his capacity as "Chief Risk<br>Management Officer" and Vice President of<br>Risk Management" of Nexus Services Inc.),<br><br>    Defendants. | Case No. 5:18cv47 (MFU) |

## AMENDED COMPLAINT

Come now the Plaintiffs, David B. Briggman, Tania Cortes, and Richard W. Nagel, by

Counsel, who file this Amended Complaint against the Defendants, and state as follows:

1

## NATURE OF THE ACTION

1. This is a civil action against the Defendants for: (A) unlawful interception, recording, and disclosure of Plaintiffs' oral and/or wire communications in violation of 18 U.S.C. § 2510, *et seq.,* and § 19.2-62 and -69 of the Code of Virginia; (B) unlawful access and procurement of Plaintiff Briggman's non-locally stored electronic communications in violation of 18 U.S.C. §2701, *et seq.*; (C) wrongful constructive termination of Briggman's and Cortes' employment as a result of Defendants' conduct in violation of Virginia public policies regarding property and privacy rights, as well as Defendants' other unlawful conduct which created an objectively intolerable work environment; and (D) Plaintiff Briggman's malicious prosecution.

## JURISDICTION AND VENUE

2. Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1331 because of the presence of federal questions pursuant to 18 U.S.C. § 2510, *et seq.*, and 18 U.S.C. § 2701, *et seq*.

3. Supplemental jurisdiction of this Court over the pendant state claims is hereby invoked pursuant to 28 U.S.C. § 1367.

4. Venue is invoked pursuant to 28 U.S.C. § 1391(b)(1) in that the principal place of business of the Defendants lies within this judicial district and division.

## PARTIES

5. Plaintiff, David B. Briggman ("Briggman"), is a resident of Rockingham County, Virginia, and a former employee of Nexus Services Inc.

6. Plaintiff, Tania Cortes ("Cortes"), is a resident of the City of Harrisonburg, Virginia, and a former employee of Nexus Services Inc.

7. Plaintiff, Richard W. Nagel ("Nagel"), is a resident of the City of Harrisonburg, Virginia, and a former employee of Nexus Services Inc.

8. Defendant, Nexus Services Inc. ("Nexus"), is a corporation duly registered in Virginia with its principal place of business in Augusta County, Virginia.

9. Defendant, Michael Paul Donovan ("Donovan"), was at all times relevant to this matter the President and Chief Executive Officer of Nexus, and a resident of Augusta County, Virginia.

10. Defendant, Richard Edward Moore ("Moore"), was at all times relevant to this matter, Executive Vice President of Nexus, and a resident of Augusta County, Virginia.

11. Defendant, Erik G. Schneider ("Schneider") was at all times relevant to this matter the "Vice President of Risk Management" (formerly the "Chief Risk Management Officer") of Nexus, and a resident of Augusta County, Virginia.

## FACTS RELATIVE TO INTERCEPTION, RECORDING AND DISCLOSURE OF EMPLOYEES' COMMUNICATIONS

12. On March 3, 2017, Donovan confronted Briggman by playing a recording of a conversation which took place weeks earlier between Briggman, Cortes, and Nagel while they travelled in a Nexus-owned vehicle in Verona, Virginia. None of the parties to the conversation had consented to any recording of their conversations. Shortly after the confrontation, Briggman notified Nagel that his company-assigned vehicle likely had a listening device installed within.

13. Between April 8th and April 17th, 2017, Briggman went on vacation with his family, during which Defendants twice requested that he provide Nexus' information technology department with passwords to the two computers he used in the course of his employment so that Nexus could perform "hardware upgrades." Briggman declined to provide those passwords.

14. Briggman returned to work on April 18, 2017, and Donovan inquired why he had been communicating with journalists from the Washington Post, to which Briggman replied that

3

such knowledge could only have been drawn from accessing his personal emails and social media messages.

15. Donovan replied that he could review Briggman's personal email and social media accounts because he accessed them from a Nexus computer. After Briggman objected, Donovan offered to inform him about "safe spaces" throughout the Nexus campus where one could avoid being monitored, on the condition he promise to not disclose such information to other coworkers. Briggman's email and social media accounts were not stored locally on Nexus-owned computers or network resources, but were accessed remotely through one or more internet browsers.

16. On April 18, 2017, Nagel was called into a conference room and interrogated by Schneider and another Nexus employee who confronted Nagel with accusations that he intended to compete with Nexus, which Nagel denied.

17. Schneider and the other employee then threatened to "ruin any political or business endeavors" Nagel may have, which prompted Nagel to ask how they intended to blackmail him.

18. Schneider responded by playing a recording made on or about April 14, 2017 of a conversation between Nagel, Cortes, and another former employee, Andrew Jones, while they were standing outside of Nagel's residence near his Nexus vehicle.

19. Upon hearing the audio recording, Nagel declined to participate any further in the interrogation and repeatedly stated his intention to resign from Nexus due to their unlawful surveillance, but instead, Nagel's employment was immediately terminated.

4

## FACTS RELATIVE TO WRONGFUL TERMINATION – CONSTRUCTIVE TERMINATION/HOSTILE WORKPLACE

20. Plaintiffs became friends during their employment at Nexus, and Nagel and Cortes are a couple who dated at that time.

21. Defendants' audio recording and email spying were symptomatic of the paranoid and hostile culture propagated during and certainly after Plaintiffs' employment at Nexus.

22. Defendants Donovan and Moore, with enforcement help from Schneider, have exhibited a pattern of systematically harassing their perceived enemies, most often using the court system as a cudgel by virtue of Nexus' in-house law firm.

23. As evidence of Nexus' financial malfeasance surfaced with payroll and benefits irregularities, the Defendants exhibited growing paranoia and hostility toward the Plaintiffs when they began asking questions.

24. The Defendants created an intolerable work environment with increasing intensity toward the Plaintiffs until each either resigned or was terminated.

25. Plaintiffs each participated in the "Nexus Services, Inc. 401(K) Plan" (the "401(k) Plan"), an ERISA qualified employee benefits plan hosted by Guardian Insurance & Annuity Company ("Guardian").

26. On or about the second week of the 401(k) Plan's administration, Defendants Nexus, Donovan and Moore began diverting Plan contributions withheld from Plaintiffs' wages and failed to make matching contributions, which continued frequently until April 2017. (See attached pages from U.S. Dept. of Labor Employee Benefits Security Administration Inquiry Report dated January 24, 2018, Plaintiffs' Ex. A)

27. In May 2016, Briggman took a small loan from his 401(k) Plan account to be repaid through weekly payroll withdrawals over a one-year term. Although withdrawals began

5

almost immediately, the payments were not credited to Briggman's loan until on or about July 19, 2016 and then on only three occasions until on or about September 8, 2016.

28. After Briggman began to receive past-due notices from Guardian in August 2016, he expressed concerns to the Director of Human Resources at that time, Chad Sager. Despite numerous attempts, Sager was never able to resolve the problems before he resigned in January, 2017.

29. On August 15, 2017, Nexus mailed a letter (authored by Defendant Donovan) to the Plaintiffs and other 401(k) Plan participants with "Notice of Administrative Errors" which included the "non-timely deposit of employee elective deferrals into individual accounts" as well as "inconsistent compliance with express provisions of the Plan document." (See attached Letter dated July 3, 2017, Plaintiffs' Ex. B)

30. At all times relevant hereto, Plaintiffs participated in an ERISA-qualified employee group health plan ("Health Plan") established by Nexus and insured by Anthem.

31. In early 2016, Plaintiffs Briggman and Cortes began to experience delays in the processing of claims submitted to Anthem for processing, with numerous claims being ultimately rejected without any reason given. Upon inquiry, Defendant Moore told Briggman the rejections were due to Anthem's inability to adjust to Nexus' "explosive growth."

32. Also in early 2016, Briggman contacted Anthem regarding Defendant Moore's explanation for the rejected claims, about which Anthem advised him Nexus was severely delinquent in their payments and that Moore specifically failed to comply with repeated promises to pay.

33. These problems continued during the remainder of Plaintiffs' employment, and upon information and belief, Nexus was approximately $524,000 and six months in arrears on

6

their Health Plan premium payments as of March 2017. (See attached screenshot of Nexus' Anthem account statement, Plaintiffs' Ex. C)

34. According to information and belief, Cortes' outstanding medical bills were sent to collection in July 2018. Furthermore, prior to termination, Plaintiff Nagel declined to seek medical care due to fear that any claims he submitted to Anthem would be rejected and unpaid.

35. On or about January 3, 2017, after weeks of inconsistent dates of pay, a substantial number of Nexus payroll checks were not honored by their bank and later not accepted for deposit due to insufficient funds in Nexus' drawee account. (See attached dishonored payroll check dated January 3, 2017, Plaintiffs' Ex. D)

36. Plaintiffs received their first W2 for 2016 in early February 2017 from the company's payroll vendor, Gusto, but were simultaneously instructed by Defendant Moore not to use them for tax filings because another payroll company would be auditing the W2s and sending out corrected documents.

37. In late February 2017, Plaintiffs discovered that a Nexus employee named Elizabeth Hurst was performing the audit rather than an independent payroll company. Nexus sent out purportedly correct W2s on or about February 28, 2017.

38. Briggman's gross income was originally reported to be $38,976, and amended in late February 2017 to $53,050, and corrected again to over $76,000 in July 2017. (See attached Briggman's redacted 2016 W2s, Plaintiffs' Ex. E)

39. Briggman requested from the United States Internal Revenue Service a report showing that as of late-April 2017, Nexus still reported his gross income to be the amount stated on the first 2016 W2 issued by Gusto. (See attached IRS Wage and Income Transcript dated April 24, 2017, Plaintiffs' Ex. F)

7

40. On April 3, 2017, Cortes terminated her employment with Nexus. On April 18, 2017, Nagel was terminated from his employment with Nexus. On April 20, 2017, Briggman terminated his employment with Nexus.

41. Plaintiffs intend to introduce evidence that, in the months leading to the resignations of Briggman and Cortes, Plaintiffs expressed their grievances about untimely wage payments, misdirected withholdings of 401(k) Plan contributions and loan payments, misdirected withholdings for Health Plan premiums, audio recording, and unauthorized email access. It was the combination of Defendants': (i) malfeasances; (ii) disregard of grievances; (iii) defense of said malfeasances; and (iv) threats and harassment of the Plaintiffs for expressing said grievances, that formed the intolerable conditions in violation of public policy which Defendants intended to result in the aforementioned resignations.

## FACTS RELATIVE TO MALICIOUS PROSECUTION

42. On April 24, 2017, four days after Briggman resigned, Defendant Schneider acting in the course of his employment as Nexus' Chief Risk Management Officer, and on behalf of Donovan and Moore, swore out a warrant in the Harrisonburg-Rockingham General District Court falsely charging Briggman with petit larceny of paper towels and an electric power strip from Nexus' Harrisonburg office on April 1, 2017. (See attached criminal complaint in case number GC17-2229, Plaintiffs' Ex. G)

43. The Rockingham County Commonwealth Attorney's Office declined to participate in the petit larceny prosecution, therefore Schneider presented evidence and argument against Briggman at trial on July 10, 2017.

44. Schneider presented a surveillance video and a newspaper article with hearsay about Briggman loaning a "surge suppressor to the Corey Stewart gubernatorial" campaign and

8

Case 5:18-cv-00047-MFU-JCH   Document 23-1   Filed 09/26/18   Page 8 of 18   Pageid#: 254

discarding food scraps in paper towels on April 1, 2017 at Court Square. The surveillance video did not show Briggman leave the building with paper towels. The Court allowed Briggman's motion to strike and found him not guilty. (See attached case details for GC17-2229, Plaintiffs' Ex. H)

45. On June 5, 2017, Defendant Schneider acting in the course of his employment, and on behalf of Donovan and Moore, appeared before an Augusta County Magistrate and swore out a warrant falsely alleging that Briggman committed computer harassment on May 6, 2017. (See attached criminal complaint and warrant in case number GC17-6196, Plaintiffs' Ex. I)

46. On June 9, 2017, Defendant Schneider acting in the course of his employment, and on behalf of Donovan and Moore, appeared before an Augusta County Magistrate and swore out a warrant falsely charging Briggman with a second count of computer harassment, alleged to have occurred on that date. (See attached criminal complaint in case number GC17-6396, Plaintiffs' Ex. J)

47. In neither complaint for computer harassment did Schneider allege Briggman's Facebook posts – the impetus for Schneider's complaints – were communicated to or intended to be seen by him. Schneider alleged "members of the community" showed him the posts, but purposefully omitted the fact that he was not Briggman's Facebook friend and therefore would never have seen the posts, which also do not meet the standard of criminal harassment required under Va. Code § 18.2-152.7:1 even if Briggman had communicated them to Schneider.

48. At trial on August 17, 2017, the judge dismissed all charges against Briggman for computer harassment in case numbers GC17-6196 and GC 17-6396. (See attached warrants and dismissals, Plaintiffs' Ex. K)

49. On June 19, 2017 Defendant Schneider, acting in the course of his employment, and on behalf of Donovan and Moore, sought and received an Emergency Protective Order (EPO) from an Augusta County Magistrate against Briggman. Because Briggman was out of town for three days at the time the EPO was granted, it was extended to a Preliminary Protective Order. On June 29, 2017, a Protective Order was put into place for a period of three months. (See attached criminal complaint and protective order issued in case number GV17-942, Plaintiffs' Ex. L)

50. On July 27, 2017, Defendant Schneider, acting in the course of his employment, and on behalf of Defendant's Donovan and Moore, appeared before a Rockingham County magistrate and falsely alleged Briggman violated the Protective Order by verbally communicating with him inside the courtroom during the trial of GC17-2229 on July 10, 2017. (See attached criminal complaint and warrant in case number GC17-3579, Plaintiffs' Ex. M)

51. At trial on September 13, 2017, a court officer present during the July 10, 2017 trial testified in direct contradiction of Schneider's allegation, and Briggman was found "not guilty". (See attached summons and dismisal for GC17-3579, Plaintiffs' Ex. N)

52. On August 29, 2017, Defendant Schneider acting in the course of his employment, and on behalf of Defendant's Donovan and Moore, appeared before an Augusta County Magistrate and swore out a warrant falsely charging Briggman with computer trespass, a violation of Virginia Code Section § 18.2-152.4. (See attached criminal complaint and warrant in case number GC17-9789, Plaintiffs' Ex. O)

53. On or about September 6, 2017, Defendant Schneider acting in the course of his employment, and on behalf of Defendant's Donovan and Moore, appeared before an Augusta County Magistrate and swore out a warrant charging Briggman with a second violation of

10

protective order. (See attached criminal complaint and warrant in case number GC17-10041, Plaintiffs' Ex. P)

54. At trial on January 30, 2018, Schneider acknowledged that he was neither Briggman's Facebook friend nor could he view Briggman's posts, but third-parties delivered screenshots or copies of the posts to him, and the posts did not mention or directly link to Schneider, therefore Briggman did not communicate with him.

55. Both the computer trespass and the second protective order violation charges were dismissed on January 30, 2018. (See attached warrants and dismissals for GC17-9789 and GC17-10041, Plaintiffs' Exs. Q and R)

56. Each of the failed prosecutions heretofore described were initiated by Schneider at the direction and in furtherance of Defendants goals to harass Briggman, who they considered to be an enemy due in part to his efforts to expose Nexus' malfeasance and seek unemployment compensation.

57. It should also be noted that Nexus filed a multifarious civil complaint in the Harrisonburg/Rockingham Circuit Court (CL17-3044) against several former employees, including Plaintiffs and Briggman's wife. Following vigorous responsive motions filed by Counsel, Nexus amended the complaint "for strategic reasons" to remove all claims except those against Briggman and Nagel. Counsel has a motion for sanctions and dismissal of all claims with prejudice pending in that matter.

58. Nexus' civil lawsuit is circumstantial evidence pointing to Defendants' malicious intent to retaliate against and harass the Plaintiffs with all legal processes at their disposal.

11

# COUNT I
## UNLAWFUL INTERCEPTION OF ORAL AND WIRE COMMUNICATIONS
18 U.S.C. §2511 and §2520
*(All Plaintiffs v. All Defendants)*

59. Plaintiffs incorporate by reference the allegations contained in paragraphs one (1) through fifty-eight (58) as if fully set forth herein.

60. Plaintiffs allege that during their employment with Nexus they were subject to having their oral conversations recorded while on Nexus property and in or around Nexus-owned motor vehicles in violation of 18 U.S.C. §2511, et seq.

61. Plaintiffs in no manner consented to having their conversations intercepted and recorded by Defendants, none of whom were parties to the Plaintiffs' communications.

62. Defendants' audio recording likely captured telephone communications made by each Plaintiff during their employment with Nexus.

63. Defendants intercepted Plaintiffs' oral communications without good faith reliance on any a court warrant or order, subpoena, legislative or statutory authorization, law enforcement or investigative request, or determination that such conduct was permitted.

64. Defendants exhibited conduct that was willful, malicious, oppressive and in reckless disregard of the Plaintiffs' rights.

65. Defendants actions were taken in furtherance and support of Nexus' operations.

66. Plaintiffs were damaged and are authorized to recover civil damages for violations of 18 U.S.C. §2511, pursuant to 18 U.S.C. §2520, which also allows the award of punitive damages, reasonable attorneys' fees and other litigation costs reasonably incurred.

WHEREFORE the Plaintiffs respectfully demand this Honorable Court enter judgment against Defendants, jointly and severally, for Count I and award statutory damages in the larger amount of $100 per day per Plaintiff or $10,000.00 per Plaintiff, punitive damages, and

12

Case 5:18-cv-00047-MFU-JCH  Document 23-1  Filed 09/26/18  Page 12 of 18  Pageid#: 258

attorneys' fees and costs, as set forth in 18 U.S.C. § 2520, as well as any other relief this Court finds to be warranted.

## COUNT II
## <u>UNLAWFUL INTERCEPTION, DISCLOSURE OR USE OF ORAL COMMUNICATIONS</u>
§ 19.2-62 and -69 of the Code of Virginia
*(All Plaintiffs v. All Defendants)*

67. Plaintiffs incorporate by reference the allegations contained in paragraphs one (1) through sixty-six (66) as if fully set forth herein.

68. As heretofore described, Defendants have intentionally intercepted and endeavored to disclose Plaintiffs' private oral communications without prior consent or good faith defense, in violation of Virginia Code §19.2-62, *et seq.*

69. Defendants' exhibited conduct which was willful, malicious, oppressive, and in reckless disregard of the Plaintiffs' rights.

70. Plaintiffs were damaged and are authorized to recover civil damages for violations of §19.2-62, pursuant to §19.2-69, which also allows the award of punitive damages, reasonable attorneys' fees and other litigation costs reasonably incurred.

WHEREFORE the Plaintiffs respectfully demand this Honorable Court enter judgment against Defendants, jointly and severally, for Count II and award statutory damages in the larger amount of $4000 or $400 per day for Nagel and Cortes, and $8000 or $800 per day for Briggman, who spoke to his wife from his office every day, punitive damages, attorneys' fees and costs in the prosecution of this matter as set forth in Virginia Code §19.2-69, as well as any other relief this Court finds to be warranted.

# COUNT III
## UNLAWFUL ACCESS AND PROCUREMENT OF STORED COMMUNICATIONS
18 U.S.C. §2701 and §2707
*(Briggman v. All Defendants)*

71. Plaintiffs incorporate by reference the allegations contained in paragraphs one (1) through seventy (70) as if fully set forth herein.

72. As heretofore described, Defendants intentionally accessed and procured Briggman's private email and social media communications without prior consent or good faith defense, in violation of 18 U.S.C. § 2701, *et seq.*

73. Defendants exhibited conduct which was willful, malicious, oppressive, and in reckless disregard of Briggman's rights.

74. Defendants' actions were taken in furtherance and support of Nexus' operations.

75. Briggman is authorized to recover civil damages for violations 18 U.S.C. § 2707, which also allows the award of punitive damages, reasonable attorneys' fees and other litigation costs reasonably incurred.

WHEREFORE, Briggman respectfully demands this Honorable Court enter judgment against Defendants, jointly and severally, for Count III and award statutory damages in the amount of at least $1000, punitive damages, attorneys' fees and costs in the prosecution of this matter pursuant to 18 U.S.C. § 2707, as well as any other relief this Court finds to be warranted.

# COUNT IV
## WRONGFUL TERMINATION
## CONSTRUCTIVE DISCHARGE/HOSTILE WORKPLACE
*(Briggman and Cortes v. Nexus, Moore, and Donovan)*

76. Plaintiffs incorporate by reference the allegations contained in paragraphs one (1) through seventy-five (75) as if fully stated herein.

77. Plaintiffs Briggman and Cortes were compelled to terminate their employment with Nexus due to the combined effect of the deliberate actions of Nexus, Moore and Donovan,

14

including some contraventions of Virginia public policy, which created a workplace so intolerable and unbearable that no reasonable person would have endured such conditions.

78. It is public policy of the Commonwealth of Virginia to discourage conduct which violates Virginia Code §40.1-29, the Virginia Wage and Pay Act.

79. Defendants maintained inconsistent dates of pay, and deliberately caused to be issued a substantial number of payroll checks that were either dishonored or not accepted for deposit due to insufficient funds.

80. Defendants caused to be issued numerous delayed and inconsistent W2s to Plaintiffs, provided disingenuous explanations for said delays and inconsistencies, and submitted potentially fraudulent information to the IRS, which frustrated and prejudiced the Plaintiffs' ability to comply with legal tax filing requirements.

81. Defendants deliberately withheld wages from Plaintiffs' paychecks and diverted those funds away from 401(k) Plan accounts without authorization.

82. Defendants deliberately withheld wages from Plaintiffs' paychecks and diverted those funds away from accounts used for making Health Plan premium payments without authorization resulting in several denials of care and service for the Plaintiffs, as well as a Cortes' children.

83. It is public policy of the Commonwealth to prohibit irregular payroll practices and withholding of employee wages for unauthorized purposes, pursuant to Va. Code §40.1-29. See also Blanchard v. Capital One Servs., LLC, 91 Va. Cir. 320, 323-324 (2015)(recognized public policy underlying Virginia Wage and Pay Act and held no specific procedure required for employee enforcement)

15

84. The deliberate withholding and diversion of Health Plan premium payments and 401(k) contributions by Defendants made the workplace conditions for Plaintiffs so intolerable that no reasonable person would have endured such conditions, and said acts were in contravention of Virginia public policy.

85. The Defendants' deliberate unlawful interception of Plaintiffs' private communications, without their consent, and in violation of Virginia's Wiretapping Act (Va. Code §§ 19.2-62 through 19.2-69), and the Electronic Communications Privacy Act (8 U.S.C. §§ 2511 through 2520) made the workplace conditions for Plaintiffs so intolerable and unbearable that no reasonable person would have endured such conditions.

86. The Supreme Court of Virginia has held that Virginia's Wiretap Act is our "version" of the Electronic Communications Privacy Act, which itself has been recognized as public policy in other courts and should be recognized as such here. See Global Policy Partners, LLC v. Yessin, 686 F.Supp.2d 631, 637 (E.D. Va. 2009); Beckhaut v. Apple, Inc., 74 F.Supp. 3d 1033, 1050 (N.D. Ca. 2014); Piertrylo v. Hillstone Rest. Group, No. 06-5754 FSH, 2009 U.S. Dist. LEXIS 88702, 2-3 (D.N.J. Sept. 25, 2009)

87. The combination of Defendants deliberate actions was a calculated effort to pressure Briggman and Cortes to resign, and therefore constituted wrongful termination by constructive discharge.

88. As a direct and proximate result of their wrongful termination, Briggman and Cortes have suffered and continue to suffer substantial losses of past and future earnings, bonuses, and other employment benefits, as well as expenses in obtaining benefits due to them.

89. As a direct and proximate result of their wrongful termination, Briggman and Cortes have suffered and continue to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

90. Defendants acted in wanton, malicious and willful disregard of Plaintiffs' common law and statutory rights.

WHEREFORE Plaintiffs Briggman and Cortes respectfully demands this Honorable Court enter judgment against Defendants Nexus, Moore and Donovan jointly and severally, for Count IV and award compensatory and actual damages to be determined at trial, punitive damages, and attorneys' fees and costs, as well as any other relief this Court finds to be warranted.

## COUNTS V-X
### Common Law Claims of Malicious Prosecution
(*Briggman vs. All Defendants*)

91. Plaintiff incorporates by reference the allegations contained in paragraphs one (1) through ninety (90) as if fully stated herein.

92. As heretofore described, Defendant Schneider, on behalf of Nexus, Donovan and Moore, maliciously instigated six (6) criminal prosecutions against Briggman, each of them lacking probable cause and ending at trial with a favorable outcome for Briggman.

93. Prior to each filing for prosecution, Schneider knew or should have known that Briggman's actions lacked criminal intent and did not provide probable cause.

94. As a result of Schneider's criminal prosecutions, Briggman was arrested numerous times in 2017.

95. Defendants instigated these prosecutions with the intent to injure Briggman's reputation, retaliate against him for disloyalty, and harass him as an enemy.

17

96. As a result of Defendants' actions: (a) Briggman's reputation has been greatly damaged; (b) Briggman has been hampered in efforts to regain employment, causing him to suffer economic losses; (c) Briggman has been forced to expend substantial time and money to defend himself against the malicious prosecutions; (d) Briggman has experienced severe anxiety and mental anguish; and (e) Briggman has been made the object of public scorn, ridicule, and humiliation.

97. The Defendants' misconduct was wanton, willful and in utter disregard of Briggman's rights.

WHEREFORE Plaintiff Briggman respectfully demands this Honorable Court enter judgment against the Defendants, jointly and severally, for Counts V through X and award compensatory and actual damages to be determined at trial, punitive damages, and attorneys' fees and costs, as well as any other relief this Court finds to be warranted.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

Respectfully submitted,

/s/ Nicholas A. Hurston
Nicholas A. Hurston (VSB #86717)
Law Offices of Little & Hurston, PLLC.
562 Calvert Street, Suite C
Staunton, VA 24401
Telephone: (540) 886-0440
Facsimile: (540) 886-8008
hurstonlaw@gmail.com
*Counsel for Plaintiffs*

Dated: September 26, 2018