IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| DAVID B. BRIGGMAN, et al., | ) |
| Plaintiffs, | ) Case No. 5:18cv47 (MFU) |
| v. | ) |
| NEXUS SERVICES INC., et al., | ) |
| Defendants. | ) |

**PLAINTIFFS' REPLY SUPPORTING THEIR SECOND
MOTION FOR LEAVE TO AMEND COMPLAINT**

Plaintiffs reply to the Defendants' Opposition to Plaintiffs' Second Motion for Leave to File An Amended Complaint. The Defendants make several arguments, but in summary they are: (i) Plaintiffs unduly and prejudicially delayed filing their amended complaint in bad faith; and (ii) Plaintiffs' proposed amendments are futile. Contrary to Defendants' argument, Plaintiffs' delay in filing the amendments was excusable due to several circumstantial factors, and in any event was not prejudicial because the parties are still very early in litigation. The constructive discharge claims are not futile where Virginia and Federal courts have: (i) recognized Bowman constructive discharge claims. and (ii) recognized the Virginia Wage and Pay Act (§40.1-29) as public policy designed to protect an individual's property right to compensation. This Court should recognize Virginia's wiretapping law (§19.2-61, *et seq.*) as a statute designed to protect an individual's personal freedom to privacy, and therefore is a public policy on which a Bowman claim may be premised. Furthermore, the Plaintiffs' constructive discharge claims should be analyzed with consideration of the totality of circumstances involving

1

Defendants' violations of public policy as well as other oppressive conduct aimed at them individually.

Briggman's malicious prosecution claims are also not futile where evidence will be presented showing Defendants' malicious and vengeful conduct against him which warrants an inference of malice with respect to their underlying motives for initiating the criminal prosecutions. Circumstantial evidence, including but not limited to: (a) the timing when each prosecution was initiated; (b) the underlying animosity between Briggman and the Defendants owing to Briggman's reporting online and to government agencies of Nexus' misconduct; (c) Defendants' excessively litigious nature prior to and after the prosecutions; and (d) Schneider's access to legal counsel prior to instigating said prosecutions will establish that Schneider knowingly lacked probable cause for each prosecution. The evidence will show that the prosecutions were not instigated in a good faith attempt to punish criminal conduct, but rather and solely to harass Briggman. The fact that a magistrate or arresting officer believed Schneider's false allegations against Briggman do not mean probable cause existed such that a malicious prosecution claim would fail a motion to dismiss, but rather are merely facts to be considered by a jury.

### I. Any Delay Between Filing the Original Complaint and this Amendment was Neither Undue Nor the Product of Bad Faith or Dilatory Motive, and in Any Event is Not Prejudicial to Defendants.

Defendants argue in their Opposition to the Second Amended Complaint ("OSA") that the Plaintiffs' proposed amendments should be denied because they result in "added expense" and "a more complicated and lengthy trial." (Dkt. 27 at 8-9) While it is true the proposed amendments add claims which appear unrelated to the original wiretapping claims, specifically Briggman's malicious prosecution claims, the Plaintiffs intend to present evidence of Nexus'

2

paranoid corporate culture wherein employees are unlawfully monitored for absolute loyalty, threatened if perceived to be standing against the interests of Nexus executives, and harassed for exerting their rights during or after employment.

The Plaintiffs were subjected to harassment and oppressive conduct during and after their employment with Nexus because the Plaintiffs were expressing disapproval of Nexus' business practices. The prosecutions initiated by Schneider as "Chief Risk Management Officer" for Nexus are part of Defendants' pattern of harassment against Briggman, which includes a civil lawsuit filed in September 2017 alleging several frivolous claims, most of which were removed after being challenged. Plaintiffs' intention for combining malicious prosecution claims with the wiretapping and constructive discharge claims was judicial economy – both in consolidating filings, discovery and court appearances, but also in the evidence and witnesses upon which Plaintiffs intend to rely. The Plaintiffs are confident the jury will not be confused about the narrative of transactions and occurrences the evidence will establish about Nexus which, in turn, will circumstantially evince the malice and lack of probable cause underlying Briggman's prosecutions.

Defendants' OSA cites several cases in support of their argument that Plaintiffs' delay in filing the amendments was in bad faith, undue and would prejudice them; however, those cases dealt with situations where the parties were much farther along through litigation, thereby increasing the prejudice of the amendments.[1] (Dkt. 27 at 8-12) The delay in filing Plaintiffs'

---

[1] See Smith v. Angelone, 111 F.3d 1126, 1134 (4th Cir. 1997)(prejudice may be found if an amendment "is proposed late enough" and requires the opponent "to engage in significant new preparation" or results in the "added expense and the burden of a more complicated and lengthy trial); Deasy v. Hill, 833 F.2d 38 (4th Cir. 1987)(amendments offered after discovery completed and immediately before trial were prejudicially delayed); Peters v. Bank of Am., N.A., 2015 WL 269424 (futile new class claims based on different statute but same facts unduly prejudicial when filed the evening before a settlement conference and near the end of discovery); Wilkins v. Wells

amendments was due to Plaintiff Counsel's need to research the numerous additional issues for which Plaintiffs wanted to sue Defendants and distill the breadth of information provided by Plaintiffs. In addition to researching the facts and law pertinent to the additional claims Plaintiffs wanted filed, Counsel was expending a great deal of time handling the defense against Nexus' frivolous lawsuit against Plaintiffs (Rockingham Circuit Court, CL17-3044, filed September 29, 2017), which included a lengthy sanctions motion, during the time he may otherwise have been working on filing the proposed claims. Counsel states that his research led him to reject filing more causes of action than were eventually filed, and therefore he asserts his delay actually saved the Defendants time and resources responding to claims which Plaintiffs could not have reasonably expected to succeed. This Court should find no undue delay or prejudice in these circumstances.

## II. The Proposed Constructive Termination Amendments are Not Futile.

Defendants argue initially that this Court should deny Plaintiffs' addition of constructive termination claims grounded in violations of public policy statutes (Bowman claims) because federal courts in Virginia are split regarding the viability of such claims where the Virginia Supreme Court has not yet ruled on the issue. Alternatively, Defendants argue that Plaintiffs have failed to plead facts sufficient to support such claims, specifically regarding the statutes cited as requisite to a Bowman claim and the nature of the statutory rights Plaintiffs claim were violated which created circumstances supporting a theory of constructive termination. Plaintiffs argue herein that this Court should maintain its current recognition of constructive termination claims grounded in the Bowman exception. Plaintiffs further argue that the constructive

---

Fargo Bank, N.A., 320 F.R.D. 125, 127 (E.D. Va. 2017)(the "basis for a finding of prejudice essentially applies where the amendment is offered shortly before or during trial")

4

termination claims are sufficiently pled where at least one Virginia statute (the Wage and Pay Act) cited has been recognized as providing a public policy exception under Bowman, and another Virginia statute (the Wiretapping Act) should be recognized as public policy to protect personal freedoms and the welfare of the people in general. Finally, Plaintiffs argue that the cumulative effect of Nexus' malfeasance against the Plaintiffs – whether indicative of Bowman-worthy public policy statutes or otherwise – created circumstances of an intolerable nature which left the Plaintiffs no choice but to resign, as intended by the Defendants.

> A. The Western District of Virginia has Recognized a Constructive Termination Claim and this Court Should Maintain that Recognition Despite the Current Split Among Federal Courts.

In Faulkner v. Dillon, 92 F.Supp. 3d 493, 499 (W.D. Va. 2015), the Western District of Virginia acknowledged the split among Virginia's federal courts regarding the existence of common law constructive termination claims, as well as the Fourth Circuit's nonprecedential unpublished decisions in Hairston v. Multi-Channel TV Cable Co. (citation omitted) and Grier v. Titan Corp. (citation omitted), to "consider the extensive litigation on this issue in Virginia trial courts to anticipate how the Supreme Court of Virginia would rule on this issue." Based on the "current development of state case law," this Court decided to recognize constructive termination as a viable common law claim, which was "also supported by the trend in other states." Id. This Court should maintain its recognition of common law constructive termination claims.

> B. Plaintiffs Cite Violations of Two Virginia Statutes – the Wage and Pay Act, Which Has Been Recognized as Public Policy for a Bowman Exception, and the Wiretapping Act, Which Should Be Recognized as Public Policy for a Bowman Exception – as Grounds for Their Constructive Termination Claims, in Addition to Defendants' Other Wrongdoings Which Individually Would Not Support a Bowman Exception, but Cumulatively Created Intolerable Conditions Intended by Defendants to Force the Resignations of Plaintiffs Briggman and Cortes.

5

### i. Virginia's Wage and Pay Act

The Virginia Wage and Pay Act (§§40.1- 28, 29) protects property employees' property rights by "prescribe[ing] the manner in which an employer must pay certain employees. Miller v. Wash. Workplace, Inc. 298 F.Supp.2d 364, 379 (E.D. Va. 2004). Federal and State Courts in Virginia have allowed Bowman claims premised on the Virginia Labor and Employment Title (§40.1, *et seq.*) because "the individual right to compensation implicates the property rights, … or welfare of the people in general." Id., see also Wells v. G.R. Assoc., Inc., 2000 WL 33199263 *15-16 (E.D. Va. Nov. 22, 2000)(rejecting defendant's argument that violations of Virginia wage laws implicate a private right by finding that the statute exhibited a "specific intent to protect individual employees' private right to compensation").

Defendants OSA repeatedly cites a decision of the D.C. Federal District Court, Vasquez v. Whole Foods Mkt., Inc., 302 F.Supp.3d 36 (D.D.C. Feb. 9, 2018) to support their argument that Virginia's Wage Act is not "designed to protect" Plaintiffs' rights and therefore cannot support a Bowman claim. (Dkt. 27 at 16, 18, 20-21) The plaintiffs in Vasquez were high-ranking store leaders who claimed they were wrongfully terminated after complaining during an internal investigation about the company's manipulative actions which result in bonuses not being paid to employees. Id. at 42-43. Although the D.C. Federal District recognized that "numerous state and federal courts in Virginia have […] concluded that the Wage Payment Act confers 'an individual's right to compensation' and, as such, 'implicates a property right that falls within the Bowman exception,'" the Court opined that such conclusions were made without the benefit or consideration of two cases – Francis v. Nat'l Accrediting Comm'n of Career Arts & Services, Inc., 293 Va. 167 (2017) and Mar v. Malveaux, 60 Va. App. 759 (2012) – and therefore reached a "result different than the one reached by prior courts." Id. at 58.

6

The decision from Vasquez should not be persuasive to this Court because the decisions in Francis and Mar do not support the conclusion reached by the D.C. District Court. The plaintiff in Francis sought a protective order against a colleague in response to threats and harassment, and shortly after was terminated by defendant because she did not "fit the vision of the organization." 293 Va. at 190. Analyzing the plaintiff's claim for wrongful discharge under Bowman, the Virginia Supreme Court held that, although the protective order statutes stated a clear public policy "to protect the health and safety of the petitioner," the termination itself must violate that policy. Id. at 191. Because the plaintiff alleged her termination was retaliatory following her exercise of the right to obtain a protective order – rather than either the termination itself endangered her health or safety, or that her employer's termination prevented her from exercising those rights – the Court affirmed dismissal of her Bowman claim. Id. at 174-175.

The D.C. Circuit cited Francis as demonstrative of the "narrowness of Virginia's public policy exception" and then cited Mar to emphasize that the Wage Act does not create a right to receive pay or wages, but rather established public policy as to the manner in which employees are paid. Vasquez, 302 F.Supp.3d. at 57. The plaintiff in Mar filed a claim for unpaid wages with the Virginia Department of Labor and Industry (DOLI), and after the claim was closed, filed a private cause of action for review of the DOLI decision. 60 Va. App. at 764-765. In dismissing the claim for review, the Virginia Court of Appeals held that the Wage Act is regulatory, not remedial, and therefore does not provide a private right of action, and further held that plaintiff should instead pursue private claims based on breach of contract and quantum meruit. Id. at 770-771.

The D.C. District erred by holding that Mar and Francis dictated the conclusion in Vasquez that the public policy implicated by the Virginia Wage Act no longer supported a

7

wrongful discharge claim grounded in Bowman.  The plaintiff in Francis alleged facts that presented a generalized common law retaliatory discharge claim and Virginia has clearly rejected such claims. See Miller v. SEVAMP, 234 Va. 462, 468 (1987)(claim for retaliatory termination following exercise of right to file and participate in grievance procedure pursuant to employer's internal policies dismissed because termination only impinged upon private rights with "no impact upon public policy").  The Francis decision merely affirmed Virginia's rejection of generalized retaliatory discharge claims and the Mar decision merely affirmed that Virginia's Wage Act itself does not provide a private cause of action.  Neither of those decisions provides grounds to reject the Wage Act as the basis for a Bowman exception.  In any event, the Plaintiffs in the instant matter have pled facts supporting constructive termination based in part on Defendants' conduct which impinged on the manner in which they were paid, rather than a simple claim for unpaid wages or bonuses as presented in Vasquez and Mar.

### ii.     Virginia's Wiretapping Act

The Plaintiffs make a good faith argument that Virginia's Wiretapping Act is a statute which implicates public policy and is designed to protect personal freedoms.  The Supreme Court of Virginia has held that Virginia's Wiretap Act is our "version" of the Electronic Communications Privacy Act (ECPA), which itself has been recognized as public policy in other courts and should be recognized as such here. See Global Policy Partners, LLC v. Yessin, 686 F.Supp.2d 631, 637 (E.D. Va. 2009); Beckhaut v. Apple, Inc., 74 F.Supp. 3d 1033, 1050 (N.D. Ca. 2014)(the stored communications and wiretapping acts codified public policies safeguarding electronic privacy rights); Piertrylo v. Hillstone Rest. Group, No. 06-5754 FSH, 2009 U.S. Dist. LEXIS 88702, 2-3 (D.N.J. Sept. 25, 2009)(but for jury finding that defendants did not invade plaintiffs' privacy rights, question would have been submitted for jury determination whether

wrongful termination was in violation of the public policy of privacy rights). Just as with the ECPA, the purpose of Virginia's Wiretapping Act is to protect personal freedoms, *to* wit the privacy rights of employees. See Freedman v. Am. Online, Inc., 325 F. Supp. 2d. 638, 643 (E.D. Va. 2004)(the ECPA's "paramount objective is to protect the privacy of persons in connection with the use of electronic and wire communications)

Plaintiffs intend to introduce evidence that, in the months leading to the resignations of Briggman and Cortes, Plaintiffs expressed their grievances about timely wage payments, misdirected withholdings of 401(K) contributions and loan payments, misdirected withholdings for health insurance premiums, and illegal wiretapping. It was the combination of Defendants': (i) malfeasances; (ii) disregard of grievances; (iii) defense of said malfeasances; and (iv) threats and harassment of the Plaintiffs for expressing said grievances, that formed the intolerable conditions in violation of public policy which the Defendants intended to result in the wrongful constructive terminations.

C. Briggman's Malicious Prosecution Claims are Not Futile.

Defendants argue the SAC does not plausibly assert that Schneider lacked probable cause to instigate the prosecutions or that he did so with requisite malice, and therefore Briggman's malicious prosecution claims are futile. The Defendants further argue the SAC does not plausibly assert grounds to hold Nexus, Donovan and Moore jointly liable for Schneider's malicious prosecutions. On the contrary, the SAC asserts facts which are facially plausible to show Schneider's lack of probable cause, malicious intent, and the circumstances which implicate Nexus, Donovan and Moore intended Schneider to prosecute on their behalf with the sole intent to harass Briggman.

9

Regarding the petit larceny charge, the SAC asserts that Schneider knew Briggman was a senior employee of Nexus at the time of the alleged theft, that the prosecution was instigated shortly after Briggman resigned, and that the Commonwealth's Attorney's Office declined to prosecute, all of which points to Schneider's lack of probable cause. Furthermore, evidence will show Schneider had no reasonable belief that Briggman was not authorized to enter the Harrisonburg office, and circumstantial evidence will infer that he formed the intent to prosecute for retaliatory purposes.

Regarding computer harassment, the Defendants argue that Briggman's Facebook status with Schneider is irrelevant because "[o]ne way or another, Schneider was made aware of Briggman's posts [because] [s]urely Briggman knew, when he posted his threats, that they would reach Schneider[.]" (Dkt. 27 at 26) In addition to being highly speculative regarding what Briggman knew or wanted, this argument disregards the obvious fact that, if Briggman intended to communicate coercively or intimidatingly with Schneider, it would make no sense to post such things to a platform where he has no reasonable belief Schneider would see them. Schneider does not need to be a lawyer to understand that Briggman did not communicate those posts to him, and but for some unnamed third-party's intervention he would never have learned about them.

Regarding computer trespass, a cursory investigation of Gusto's website shows: "Dismissed employees will have lifetime access to their Gusto account as long as there is an email address associated with it so they can view and download past paystubs and W-2s that were processed through Gusto." (https://support.gusto.com/employees-contractors/employee-accounts/employee-account-settings/999942111/Account-access-after-termination.htm). For Defendants to somehow claim they reasonably felt Briggman's access to his Gusto account was

10

criminal trespass would be to admit they have neither the slightest understanding of, nor the ability to discover information regarding terminated employee access.  At best for Defendants, it would show that Schneider recklessly disregarded his duty to reasonably investigate facts concerning the alleged trespass before filing a criminal warrant, which points to a lack of probable cause.

Regarding Schneider's allegations for protective orders, the evidence clearly shows that he conflated several of Briggman's statements to form an unreasonable fear of harm which lacked probable cause.  Where Schneider alleged that Briggman violated the order by speaking in his direction after another Nexus prosecution failed, the bailiff who testified all but declared Schneider a liar by testifying that he never heard Briggman say anything at Schneider.  Schneider's victimization complex and delicate sensibilities are not valid sources of probable cause, nor is his desire to perpetually harass Briggman on Nexus' behalf by concocting fictional scenarios which magistrates unfortunately take at face value.

Defendants assert that issuance of a warrant, which inevitably led to Briggman's arrests, "could not have been done without a finding of probable cause." (Dkt. 27 at 28)  When analyzing malicious prosecution claims in Virginia, "the finding of probable cause by a magistrate or grand jury is not dispositive; rather, it is merely pertinent evidence." Smits v. Musselman, 87 Va. Cir. 75, 76 (Westmoreland County 2013), citing Bennett v. R&L Carriers Shared Servs., LLC, 744 F. Supp. 2d 494, 519 (E.D. Va. 2010).  The Defendants' argument also fails because evidence will display the Defendants' improper purposes for instigating Briggman's prosecutions, and therefore "a finding of probable cause by a magistrate or grand jury will not insulate that individual from malicious prosecution."  Id., citing O'Connor v. Tice, 281 Va. 1, 8-9 (2011)

11

D. <u>The Plaintiffs Have Met the Pleading Standard Set Forth by Ashcroft.</u>

Defendants have vigorously opposed Plaintiffs' amendments based on their assertion that the claims are factually and legally futile. Having addressed Defendants' legal arguments by direct rebuttal or making good faith arguments for novel interpretation of the law, Plaintiffs further assert they have presented facts that "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Certusview Techs., LLC v. USIC</u>, 2014 WL 12591937 *9 (E.D. Va. December 15, 2014); <u>citing</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) The facts stated by Plaintiffs "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> The SAC contains more than "mere 'labels and conclusions' or a 'formulaic recitation of the elements" of the claims asserted, and therefore would survive a motion to dismiss.

**III.    Conclusion.**

For the reasons stated above, Plaintiffs respectfully request that this Court allow Plaintiffs' Second Motion for Leave to File an Amended Complaint.

    Respectfully submitted,

    **DAVID B. BRIGGMAN,**
    **TANIA CORTES, AND**
    **RICHARD W. NAGEL**

      /s/ Nicholas A. Hurston
    Nicholas A. Hurston (VSB #86717)
    Law Offices of Little & Hurston, PLLC.
    562 Calvert Street, Suite C
    Staunton, VA 24401
    Telephone: (540) 886-0440
    Facsimile: (540) 886-8008
    hurstonlaw@gmail.com
    *Counsel for Plaintiffs*

## CERTIFICATE

I HEREBY CERTIFY that on 17th day of October, 2018, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>Brendan D. O'Toole, Esq. (VSB # 71329)
>botoole@williamsmullen.com
>Williams Mullen
>200 South 10th Street, 16th Floor
>Richmond, VA 23219
>Telephone No.: (804) 420-6588
>Facsimile No.: (804) 420-6507
>*Counsel for Defendants*

>By:    /s/ Nicholas A. Hurston
>Nicholas A. Hurston (VSB #86717)
>Law Offices of Little & Hurston, PLLC.
>562 Calvert Street, Suite C
>Staunton, VA 24401
>Telephone: (540) 886-0440
>Facsimile: (540) 886-8008
>hurstonlaw@gmail.com
>*Counsel for Plaintiffs*